**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:

HYPERION FOUNDATION, INC.,
D/B/A OXFORD HEALTH &
REHABILITATION CENTER,                                     CASE NO. 08-51288-NPO

DEBTOR.                                                                    CHAPTER 11

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO CONVERT TO CHAPTER 7 AND**
**MOTION TO CONVERT OR, ALTERNATIVELY TO DISMISS**

On June 5, 2009, there came on for hearing (the "Hearing") the Motion To Convert to Chapter 7 (the "AHC Motion") (Dk. No. 220) filed by Academy Healthcare Center, Inc., f/k/a Adventist Health Center, Inc. ("AHC"), the Answer and Response to Motion To Convert to Chapter 7 (Dk. No. 252) filed by the debtor-in-possession, Hyperion Foundation, Inc., d/b/a Oxford Health & Rehabilitation Center (the "Debtor"), the Motion To Convert or, Alternatively To Dismiss (the "UST Motion") (Dk. No. 222) filed by R. Michael Bolen, United States Trustee for Region 5 ("UST"), and the Answer and Responses to United States Trustee's Motion To Convert or, Alternatively To Dismiss (Dk. No. 253) filed by the Debtor in the above-styled chapter 11 case. At the Hearing, Derek A. Henderson appeared on behalf of AHC, Robert C. Gravolet appeared on behalf of the UST, and Craig M. Geno appeared on behalf of the Debtor. The Court, after having considered the pleadings, the testimony of witnesses, arguments of counsel, and relevant legal authorities, denied both the AHC Motion and the UST Motion from the bench on the condition that the Debtor complied with certain provisions set forth below.

The Court, upon further review, entered an Order (Dk. No. 273) directing the parties to file legal briefs addressing the issue as to whether the Debtor is an eleemosynary institution exempt from involuntary conversion under Section 1112(c) of the Bankruptcy Code. 11 U.S.C. § 1112(c). The issue remains viable, despite this Court's oral ruling denying the conversion, given that the parties may seek to convert this case again in the event the Debtor fails to comply with the conditions imposed for remaining in chapter 11.[1]  AHC requested an extension of time, which the Court granted in an Amended Order (Dk. No. 274). Despite assurances that the parties would provide the information and authorities requested in the Amended Order, the Court has received nothing. Accordingly, the Court will rule based on the information and authorities available.[2]

## Jurisdiction

This Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Notice of the AHC Motion and UST Motion were proper under the circumstances.

## Facts

1.     On October 1, 2005, the Debtor, a nonprofit corporation,[3] and AHC entered into a Lease Agreement whereby the Debtor leased certain nonresidential real property in Lumberton, Mississippi, for the purpose of operating a nursing home known as the Oxford Health &

---

[1] The UST Motion is the second attempt by the UST to convert or dismiss this chapter 11 case. On October 9, 2008, the UST filed his first Motion To Convert or Alternatively To Dismiss (Dk. No. 98).

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

[3] See Statement of Financial Affairs ¶ 21 (AHC Ex. 2).

Rehabilitation Center. (AHC Motion).

2.	AltaCare Corporation ("AltaCare") is a for-profit corporation that provides a variety of management and consulting services to the Debtor as well as to other nursing homes. (Test. of Douglas Mittleider).

3.	Facing eviction for alleged nonpayment of rent, the Debtor filed a voluntary petition for relief (the "Petition") pursuant to chapter 11 of the Bankruptcy Code (Dk. No. 1) on August 5, 2008 (the "Petition Date").

4.	AHC filed the AHC Motion on April 30, 2009, in which it listed five (5) grounds or causes to convert this case to chapter 7, as specifically identified in 11 U.S.C. § 1112(b)(4).

5.	On May 1, 2009, the UST[4] filed the UST Motion in which it listed three (3) grounds or causes under 11 U.S.C. § 1112(b) to convert or, in the alternative, to dismiss this case.

6.	In order to comply with Federal Rule of Bankruptcy Procedure 3007(b), the Debtor on June 16, 2009, filed an Amended Complaint in adversary proceeding number 09-05043 (the "Adversary Proceeding") (Adv. Dk. No. 8), in which the Debtor seeks damages against AHC under the doctrines of unjust enrichment and quantum meruit. AHC filed an Answer to Amended Complaint and Counterclaim (Adv. Dk. No. 9) on June 22, 2009. On July 6, 2009, the Debtor filed its Answer and Response to Counterclaim. (Adv. Dk. No. 16).

**Discussion**

---

[4] The amendments made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005), reduced the parties eligible to move for conversion or dismissal under 11 U.S.C. § 1112(b) from "a party in interest or the United States trustee or bankruptcy administrator" in the former version to only "a party in interest." Regardless of the effect of the omission, 11 U.S.C. § 307 separately gives the United States trustee standing to appear and be heard "on any issue."

The basic purpose of chapter 11 is to rehabilitate the debtor for the benefit of its creditors and provide the debtor with a "fresh start." In re Timbers of Inwood Forest Assocs., 808 F.2d 363 (5th Cir. 1987), aff'd, 484 U.S. 365 (1988). Section 1112(b) of the Bankruptcy Code provides a mechanism for dealing with failing chapter 11 cases by subjecting them to conversion to chapter 7 or dismissal if a party-in-interest establishes "cause." 11 U.S.C. § 1112(b). The amendments made by BAPCPA to Section 1112(b) restrict the court's role by mandating conversion or dismissal once "cause" is established unless unusual circumstances exist that demonstrate that conversion or dismissal is not in the best interest of creditors and the estate. Simultaneously, the amendments make it more difficult for a debtor to defeat such a request once cause is established by requiring the debtor to show both that (1) there is a reasonable likelihood that a reorganization plan will be confirmed within a reasonable period of time, and (2) the grounds for granting the motion were the result of an act or omission by the debtor that was reasonably justifiable and can be cured within a reasonable period of time. 11 U.S.C. § 1112(b)(2)(A), (B). Also, the amendments expand the list of illustrative examples of causes that may warrant dismissal or transfer to chapter 7 from ten (10) to include a total of sixteen (16) items.[5] 11 U.S.C. § 1112(b)(4). Whether conversion or dismissal is appropriate after a finding of cause is a question left to the broad discretion of the bankruptcy court. Norton Bankruptcy Law and Practice 2d § 82:3 (2007).

**A. AHC Motion**

In the AHC Motion, AHC cites as causes for converting this chapter 11 case to chapter 7 the

---

[5] The revised statute replaced the disjunctive "or" with the conjunction "and" immediately before the last example listed. 11 U.S.C. § 1112(b)(4). A strict interpretation of the statute would require a party-in-interest to establish *all* of the examples constituting "cause," an absurd result in light of the statute's legislative history reflecting an intent to broaden, rather than limit, its application. See In re TCR of Denver, LLC, 338 B.R. 494 (Bankr. D. Colo. 2006).

following statutory grounds:

> 1. Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, 11 U.S.C. § 1112(b)(4)(A);
>
> 2. Gross mismanagement of the estate, 11 U.S.C. § 1112(b)(4)(B);
>
> 3. Unauthorized use of cash collateral substantially harmful to 1 or more creditors, 11 U.S.C. § 1112(b)(4)(D);
>
> 4. Failure to comply with an order of the court, 11 U.S.C. § 1112(b)(4)(E); and
>
> 5. Failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief, 11 U.S.C. § 1112(b)(4)(I).

(AHC Motion). Counsel for AHC argued at the Hearing that the above grounds render this case ripe for conversion, especially in light of the Debtor's status as a nonprofit organization.[6]

Despite AHC's impassioned plea, Section 1112(c) of the Bankruptcy Code prohibits conversion of a chapter 11 case in the absence of the Debtor's consent if the Debtor is not a "moneyed, business, or commercial corporation." 11 U.S.C. § 1112(c); see 7 Collier on Bankruptcy ¶ 1112.04 [7] (15th ed. rev. 2009). In other words, a nonprofit corporation may not be an involuntary chapter 7 debtor, whether by the filing of an involuntary petition, 11 U.S.C. § 303(a), or by the filing of a motion to convert, 11 U.S.C. § 1112(c).

The legislative history of Section 303(a) indicates that "[e]leeymosynary [sic] institutions, such as churches, schools and charitable organizations and foundations" are sheltered from involuntary bankruptcy. H.R. Rep. No. 595, 95th Cong. 1st Sess. 322 (1977). None of the parties,

---

[6] During his closing argument, counsel for AHC, after acknowledging that the Debtor is a nonprofit organization, asked these questions: "What's the purpose?," "Why are we in this [chapter] 11?," "He's just a tenant," and "It's not like there are stockholders they're trying to save money for."

including the Debtor, addressed Section 1112(c) in any of their pleadings or in their arguments at the Hearing.

The Fifth Circuit Court of Appeals has held that the nature and character of a corporation for determining whether it qualifies for protection as an eleemosynary institution depends on the powers and characteristics imposed upon it by the law of the state of its incorporation. Clemons v. Liberty Savings & Real Estate Corp., 61 F.2d 448, 450 (5th Cir. 1932) (holding that status of corporation is fixed by its charter). The parties do not dispute that the Debtor is a nonprofit entity organized under the laws of Georgia, O.C.G.A. §§14-3-101 to -1703. Indeed, the articles of incorporation filed by the Debtor with the Office of the Secretary of State of Georgia describe the Debtor as a corporation organized "for religious and charitable uses" within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986 and specify that it is not organized or operated for pecuniary gain or profit.[7] The articles of incorporation fail to reveal any profit-motivated purpose, but rather declare that the Debtor is organized "for the charitable purpose of . . . operating nursing homes and related healthcare facilities, designed to serve the housing and other related needs of the elderly."

Consistent with its charter, the Debtor's registration with the Mississippi Secretary of State's Office characterizes the Debtor as a nonprofit corporation. Also consistent with its charter, the Petition reveals that the "Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code)."

It is clear that the Debtor is not a "moneyed, business, or commercial corporation" and as a matter of law cannot be forced into a chapter 7 liquidation case. See In re Maedc Mesa Ridge, LLC,

---

[7] The Fifth Circuit has held that courts may take judicial notice of information contained in official government Internet web sites under Rule 201 of the Federal Rules of Evidence. See, e.g., Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 457 (5th Cir. 2005).

334 B.R. 197 (Bankr. N.D. Tex. 2005) (even though nonprofit corporation participated in commercial activity, it was not subject to involuntary bankruptcy). Accordingly, this Court must deny the AHC Motion.

**B. UST Motion**

The denial of the AHC Motion leaves for the Court's consideration the alternative relief requested in the UST Motion. Although the focus of the Hearing was on conversion, rather than dismissal, the UST presented three (3) alternative grounds for dismissing the Debtor's case:

1. Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, 11 U.S.C. § 1112(b)(4)(A);

2. Gross mismanagement of the estate, 11 U.S.C. § 1112(b)(4)(B); and

3. Failure timely to provide information . . . reasonably requested by the United States trustee, 11 U.S.C. § 1112(b)(4)(H).

(UST Motion). This Court will address each of these grounds.

**1. Substantial or Continuing Loss to or Diminution of Estate and Absence of Reasonable Likelihood of Rehabilitation**

To satisfy this ground for dismissal, the UST must show the existence of both conditions – loss or diminution of the estate *and* no reasonable likelihood of rehabilitation. Norton Bankruptcy Law and Practice 2d § 82:4 (2007).

**a. Substantial or Continuing Loss to or Diminution of Estate**

The documentary evidence presented at the Hearing clearly showed, and counsel for the Debtor readily admitted, that the Debtor's handling of its financial affairs is far from perfect. The UST based most of his arguments in this regard on the financial information provided by the Debtor in its operating report for April, 2009, which was filed on May 22, 2009, just days before the Hearing. According to that report, the Debtor ended the month of April, 2009, with accounts

receivable of $482,242.31 (AHC Ex. 9 at 2), accounts payable of $487,754.28 – an increase from the previous month of $65,266.41 (AHC Ex. 9 at 3), negative cash flow of $98,167.18. (AHC Ex. 9 at 2), and net income (before depreciation or taxes) of $46,574.01 (AHC Ex. 9 at 4).

The operating reports for the periods ending in February and March, 2009 (AHC Ex. 7-8) likewise show that the Debtor has not been able to maintain a positive cash flow while paying its ongoing operating expenses. For this reason, the UST has clearly satisfied the first prong of Section 1112(b)(4)(A). See In re Kanterman, 88 B.R. 26, 29 (D.S.D.N.Y. 1988) (all that is necessary is finding of some diminution in value); 7 Collier on Bankruptcy ¶ 1112.04[5][a][i] (15th ed. rev. 2009). Nevertheless, whether there is a continuing loss or diminution of the estate such as to warrant dismissal requires this Court to consider the second prong and look beyond the Debtor's current financial condition.

### b. Absence of Reasonable Likelihood of Rehabilitation

The focus of the second prong of Section 1112(b)(4)(A) is rehabilitation, a concept that involves the ability of a debtor to meet current obligations from a positive cash flow. Where as here the Debtor is experiencing financial losses post-petition, the issue is whether the Debtor can correct the reasons for the losses. 7 Collier on Bankruptcy ¶ 1112.04[5][a][ii] (15th ed. rev. 2009).

At the Hearing, Douglas Mittleider ("Mittleider"), the President of AltaCare, described the years after Hurricane Katrina struck the Mississippi Gulf Coast on August 29, 2005, as financially challenging for the Debtor, not only because of the expense of repairs to the nursing home but also because of the reduction in its patient census from 120 to its current occupancy of only about 70 percent. The low occupancy rate is due in part because of the failure of evacuees to return to the community and is a problem shared by other nursing homes in the area affected by Hurricane

Katrina, especially those that, like the Debtor, are not located in or near a hospital.

The Debtor is a 120-bed facility that is certified to participate in the Medicare and Medicaid program. The Debtor receives government payments for about 90 percent of its residents and is licensed by the State of Mississippi. The average amount the Debtor receives each month for the services it provides to its current patient census is $518,000.

Mittleider prepared the Debtor's annual budget for 2009 (Debtor's Ex. 1), and in accordance with the budget, he anticipates that the Debtor will have a positive cash flow for the remainder of the year and a net cash income of $63,814.00 at the end of the year, which he attributes to an anticipated increase in the patient census. The Administrator of the nursing home, L.J. Daniels ("Daniels") supports Mittleider's vision of improving revenues. He testified that he expects the current patient census to increase slowly but steadily and believes that there is sufficient demand in the community to fill the Debtor's vacancies. Daniels has formed a marketing committee for the purpose of recruiting additional patients. Its marketing efforts include a musical group made up of patients inspired by the television show "Hee Haw" who call themselves "The Cozy Kitchen Crew Band" and who travel to nearby towns entertaining guests by playing an assortment of musical instruments, such as wash boards, banjos, and scrub boards.

Mittleider also testified that the Debtor's situation will improve as the result of a reduction in its pre-petition debts, including the payment by other vendors in the same pool with the Debtor under the provisions of a master contract. In addition, AltaCare voluntarily agreed to amend its management contract so that its fees will be subordinate to all other payments in the Debtor's reorganization plan. Mittleider further testified that the Debtor was current in paying all of its post-petition debts, with the exception of certain employment checks that he had just learned had been

dishonored by the bank, a situation that he blamed on the failure of its working capital lender to fund the Debtor's bank account in a timely manner.

In determining whether the Debtor can regain a sound financial basis for its operations, this Court must take into consideration the fact that the Debtor is a nonprofit institution with a charitable mission. Whether the Debtor can operate "profitably" during the period of time since the Petition Date is irrelevant. The important question is whether it can operate with a positive cash flow. The Court finds from the evidence that the assets of the bankruptcy estate are increasing and are likely to continue increasing and that, at the same time, the claims that must be paid out of those assets are decreasing.

The UST complains in general about the Debtor's failure to advance the chapter 11 case. This Court agrees that in determining whether a debtor can successfully rehabilitate itself, "the older the case, the better it has to look." In re Eisentrager, 102 B.R. 181, 182 (Bankr. W.D. Mo. 1989). At first blush, this case seems to be languishing. However, the Debtor's failure to file its disclosure statement as of this date is reasonably justified in that it cannot do so until the amount of unpaid rent, if any, is determined. That dispute is the subject of the Adversary Proceeding presently pending in this Court and is scheduled for trial on January 16, 2010 (Adv. Dk. No. 7). According to the Debtor, resolution of the landlord-tenant dispute would enable it to propose a confirmable plan. This Court is well aware of the reasons for the previous delays in bringing the Adversary Proceeding to trial and cannot lay blame entirely on the Debtor.

Although the Debtor is far from perfect, no business is run so perfectly that there is no room for improvement. The UST has not shown to the satisfaction of this Court that there is no reasonable likelihood of rehabilitation.

**2. Gross Mismanagement of the Estate**

At the Hearing, the UST questioned the quality of patient care provided by the Debtor. His concerns rested primarily on the results of a survey performed in February, 2009, by the Mississippi State Department of Health (the "Department") in connection with its obligation to certify nursing homes as meeting certain minimum health and safety requirements.

This Court has previously concluded in its Memorandum Opinion and Order (the "Opinion") (Dk. No. 260) entered on June 18, 2009, that the appointment of a patient care ombudsman under the specific facts of this case is unnecessary for the protection of the Debtor's nursing home residents. See 11 U.S.C. § 333(a)(1). This Court adopts that Opinion by reference and for the reasons stated in detail therein, concludes that the alleged deficiencies in patient care found by the Department do not establish cause for dismissal of this case. 11 U.S.C. § 1112(b)(4)(B).

**3. Failure Timely To Provide Information Requested by United States Trustee**

The UST complains that the Debtor has failed to submit its monthly operating reports during the pendency of its chapter 11 case in a timely manner in violation both of this Court's Standing Order and the Operational Guidelines and Reporting Requirements ("OGRR-11") promulgated by the UST for all debtors-in-possession in cases filed under chapter 11.[8] The Standing Order and OGRR-11 require the Debtor to file reports in the form provided by the UST on or before the 15th day of each month for the preceding month. In addition, the UST complains that the financial information provided by the debtor in the reports is inadequate for the UST to base decisions

---

[8] Under 28 U.S.C. § 586(a)(3), the UST is given the duty to "supervise the administration of cases and trustees . . . under chapter 11" and to take such action as the UST deems appropriate to "ensure that all reports, schedules, and fees required to be filed under title 11 . . . by the debtor are properly and timely filed." Id.

regarding the Debtor's current operations.

Monthly operating reports are the "life blood" of chapter 11, enabling creditors to stay informed about a debtor's post-petition operations. In re Berryhill, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). They are necessary to provide accurate and timely financial information about the debtor, and without question, a report filed late may be the practical equivalent of a failure to file any financial statement at all. In re Ronald Kerns & Sons, 48 Collier Bankr. Cas. 2d 810 (W.D.N.Y. 2002).

An analysis of the Debtor's post-bankruptcy filings with the Court show that the Debtor has never filed its monthly operating report within fifteen (15) days after the end of the reporting period. On the other hand, the latest that the Debtor has ever filed any report has been thirty (30) days past the due date. This is not a situation where a debtor has been several months late in filing its reports. Cf. In re Brauer, 80 B.R. 903, 905 (Bankr. N.D. Ill. 1987) (affirming dismissal of case where debtor submitted eight months of reports at the last minute). Moreover, it is unsurprising that the Debtor was unable to generate its reports within fifteen (15) days, a relatively short time period given the amount of financial information the Debtor is required to gather and assimilate in the format required by the UST. In addition, the UST did not demonstrate any prejudice by the late filings.

Also, although the UST pointed out a few deficiencies in some of the reports where more information could have been provided by the Debtor to explain certain financial events, the reports on the whole manifested a good faith effort by the Debtor to provide the information in conformance with the UST's guidelines. For example, in its operating report for the period ending in April, 2009, the Debtor did not explain in the "Narrative Statement" section of the report why the "General & Administrative" category of operating expenses decreased from $61,095 in March, 2009, to $5,324

in April, 2009. Nevertheless, the Debtor provided the critical piece of information, albeit without explanation, and the report's alleged deficiency was minor. Although there is no question that the Debtor could have performed its obligations better, this Court finds that the conduct of the Debtor does not constitute "cause" for dismissal under 11 U.S.C. § 1112(b)(4)(H).

## Conclusion

Based on the foregoing, the Court concludes that the UST has not shown that cause exists for dismissal at this time. The Debtor's failure to act in a manner that would create confidence in its rehabilitation efforts has understandably left the UST to wonder whether the Debtor can operate the nursing home with a positive cash flow. However, the Debtor explained its actions and failures and has shown that it is willing and able to cure the problems alleged by the UST in a timely manner. To ensure that the Debtor does resolve these problems, this Court will impose certain terms and conditions on the Debtor addressing such issues, for example, as the timeliness and contents of its monthly operating reports.

Even if this Court had found that cause exists for dismissal, there are unusual circumstances in this case that establish that dismissal is not in the best interest of the creditors and the estate at this time. In his closing argument at the Hearing, counsel for the Debtor argued that it was better for this Court to allow the Debtor to limp along in this chapter 11 case than to dismiss its case and thereby create chaos among the nursing home residents and in the community. The Court agrees, provided the Debtor follows through with its assertions at the Hearing to improve its operations.

IT IS, THEREFORE, ORDERED that the AHC Motion is denied, and the UST Motion is denied, subject to the following terms and conditions:

1. The Debtor shall file all monthly operating reports as they become due, but no later

than the 30th day of the month following the end of the month covered by the report. The Debtor is forewarned that the tardy filing of such reports will not be tolerated in the future.

     2.     The Debtor shall submit monthly operating reports that contain historical financial data beginning from the Petition Date.

     3.     The Debtor shall supplement its operating report for the month ending April, 2009 (Dk. No. 251), to explain fully why the "General & Administrative" category of operating expenses decreased from $61,095 in March, 2009, to $5,324 in April, 2009.

     4.     The Debtor shall supplement its monthly operating report to disclose payment of its unsecured debt by vendors belonging to a common pool under a master contract, and the Debtor shall disclose in its monthly operating reports any future payments made by the aforementioned pool of vendors.

     5.     The Debtor shall disclose in its monthly operating reports that all management fees owed to AltaCare are subordinate to the claims of all other creditors.

     6.     The Debtor shall attach to its monthly operating reports a separate narrative statement fully explaining any significant financial changes or events that occurred during the reporting period.

     7.     Within one week after the Debtor files any monthly operating report, any party-in-interest may challenge the sufficiency of the report by submitting a written request for further information or clarification to counsel for the Debtor, who shall respond to the request in writing within one week.

     8.     The Debtor shall not accept any additional cash advances from AltaCare or from any other entity (except from Northern Health Care Capital, LLC, to the extent authorized by this Court's Order dated October 23, 2008 (Dkt. No. 109)) prior to filing an appropriate motion, noticing the

motion for hearing, and receiving an order from this Court approving the loan.

9. The Debtor shall seek disgorgement of all unauthorized post-petition payments made to the law firm of Decker Hallman Barber & Briggs, as listed in the operating report for the month ending March 2009, within ten (10) days of the date of the Hearing. The Court will hold AltaCare personally liable if the Debtor fails to obtain reimbursement of the improperly paid legal fees. The Debtor shall not pay any professional fees including, but not limited to, any attorney's fees, without prior court approval. See 11 U.S.C. § 330; Fed. R. Bank. P. 2016(a).

10. The Debtor shall make sure it has personnel adequate in number and sophistication so that it does not incur any additional bank fees for overdrafts and/or insufficient funds, as reflected in its monthly bank statement.

11. The Debtor shall pay the twenty-seven (27) employment checks that it wrote on April 24, 2009, and on May 8, 2009, in the combined amount of $1,988.20 that were returned unpaid for insufficient funds (AHC Ex. 15) within two (2) business days of the date of the Hearing. The Debtor also shall pay the employment checks that it wrote on May 22, 2009, in the total amount of $818.71 (AHC Ex. 16) within two (2) business days of the date of the Hearing.

12. The Debtor shall pay any and all outstanding tax obligations within ten (10) days of the date of the Hearing.

13. The Debtor shall pay all post-petition obligations arising in the normal course of business when they become due and payable.

14. The Debtor shall amend Schedule H (Dk. No. 46) to include information concerning any and all co-debtors, guarantors or co-signers including, but not limited to, AltaCare.

15. The Debtor shall maintain and comply with the provisions concerning the lockbox

account as set forth in the Credit and Security Agreement dated June 1, 2008 (Dk. No. 109) entered into with Northern Health Care Capital, LLC.

A separate final judgment consistent with this Memorandum Opinion will be entered by this Court in accordance with Federal Rule of Bankruptcy Procedure 9021.

SO ORDERED.

/s/ Neil P. Olack
Neil P. Olack
United States Bankruptcy Judge
Dated: August 11, 2009